IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN D. WILLIAMS,<br><br>                      Plaintiff<br>     v.<br><br>CITY OF LANCASTER d/b/a<br>LANCASTER POLICE DEPARTMENT; and<br>PHILLIP BERNOT, Individually and in His Official<br>Capacity as an Officer for the<br>LANCASTER POLICE DEPARTMENT<br><br>                      Defendants. | CIVIL ACTION NO.<br>18-2773 |

**Henry S. Perkin, M.J.**                                                                        **January 10, 2020**

## MEMORANDUM

Presently before the Court are Defendants' Motion for Summary Judgment (ECF No. 42) filed October 14, 2019, Defendants' Statement of Undisputed Facts in Support of their Motion for Summary Judgment (ECF No. 43) filed October 14 2019; Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (ECF No. 47) filed December 2, 2019, Defendants' Response to Plaintiff's Statement of Facts (ECF No. 50) filed December 10, 2019, Defendants' Reply Brief in Further Support of their Motion for Summary Judgment (ECF No. 52) filed December 11, 2019, and Plaintiff's Sur-Reply in Opposition to Defendants' Motion for Summary Judgment (ECF No. 59) filed December 18, 2019. For the reasons set forth below, the Motion for Summary Judgment is **DENIED** in part and **GRANTED** in part.

### I.    FACTUAL AND PROCEDURAL HISTORY

This action arises from the use of a taser by Officer Phillip Bernot of the Lancaster Police Department ("LPD") against Plaintiff Sean D. Williams. On June 28, 2018, Mr. Williams was outside of a house on South Prince Street in Lancaster, Pennsylvania. (Pl.'s Statement of Facts ¶1.) At 10:16 a.m., police received a dispatch for a disturbance at 19 S. Prince Street, on the block where Mr. Williams was located, involving three males and a female. (Defs.'

Statement of Facts at Ex. B, Pl.'s Resp. in Opp. To Defs.' Statement of Facts ¶2.) The dispatch indicated that a "male with a bat" went after another subject at the corner of Prince and Mifflin. Id. It further specified that the male was black, with unknown clothing, and wielded the bat at "2 males and a female." (Defs.' Statement of Facts at Ex. B.)

Officer Shannon Mazzante arrived first on the scene, followed shortly by Officer Bernot. (Defs.' Statement of Facts ¶¶4, 10, Pl.'s Resp. in Opp. To Defs.' Statement of Facts ¶¶4, 10). The facts leading up to when the video of the incident begins are in dispute. According to Defendants, when Officer Mazzante arrived, witnesses identified the Plaintiff as the source of the disturbance. (Defs.' Statement of Facts ¶5.) Defendants further claim that Officer Mazzante gave Plaintiff commands to sit down, however, he did not comply with those commands. (Id. at ¶¶6-7.) As a result, Defendants aver that Officer Mazzante requested additional officers for a non-compliant individual and, when Officer Bernot appeared, she informed him that Plaintiff would not follow her commands and that Plaintiff had not been patted down for weapons. (Id. at ¶¶9-12.) Defendants further maintain that Officers Bernot and Mazzante continued to give plaintiff commands to sit on the curb, but Plaintiff remained non-compliant. (Id. at ¶¶14-16.)

Plaintiff admits that Officer Mazzante and Officer Bernot gave him commands to sit down, however, denies that he failed to follow these commands as "video shows that the Plaintiff did sit down." (Pl.'s Resp. in Opp. To Defs.' Statement of Facts ¶7.) Plaintiff also asserts that he was unarmed "wearing shorts and a t-shirt," not concealing any weapons, and notes that no weapons were found on him after he was arrested. (Id. at ¶5.) It is undisputed that the bat referenced in the dispatch was never located. (Defs.' Statement of Facts ¶8.)

At the point the videotape begins, Officer Bernot is shown standing to the right of Plaintiff, holding his Conducted Electrical Weapon (hereby referred to as a "taser") in his right hand.[1] (Defs.' Statement of Facts at Ex. A.) As Officer Bernot speaks, Plaintiff sits down on the curb.[2] Id. Officer Bernot then instructs Plaintiff to put his legs straight out, repeating "straight out" three more times over a period of approximately seven seconds as Officer Mazzante simultaneously commands Plaintiff to put his legs straight out and cross them. Id. As this occurs,

---

[1] The video can be downloaded and viewed at: https://www.elawcart.com/testagain/lancaster-pennsylvania-police-excessive-force-discrimination-civil-rights-lawsuit-sean-williams-v-city-of-lancaster/

[2] Defendants claim that Officer Bernot informed Plaintiff that, if he did not sit, he would be tased. Plaintiff denies this, stating that the video does not verify this. Officer Bernot's voice is partially inaudible at this point due to a simultaneous statement made by the person recording the video. Thus, we view the facts in favor of the non-moving party, Plaintiff.

Plaintiff appears to slowly straighten his legs, then begin to pull them back toward the curb. Id. Officer Bernot moves behind Plaintiff and states "legs straight out or you're getting tased" at which point Plaintiff again straightens his legs. Id. Officer Bernot repeats "straight out" twice as Plaintiff further straightens his legs. Id. Officer Mazzante then directs Plaintiff to "put [his] legs straight out and cross them now." Id. Following the final command from Officer Mazzante, Plaintiff begins to pull his feet and legs together, toward his body, crossing them.[3] Id. Subsequently, Officer Bernot discharged his taser into Plaintiff's back. Id.

On July 2, 2018, Plaintiff filed the underlying lawsuit, asserting three claims: Count I – Excessive Force/Assault and Battery, Count II – Eighth Amendment Violation-Failure to Provide Medical Care and Treatment, and Count III – 42 U.S.C. Sec. 1983 Discrimination Based upon Race. (ECF No. 1.) By stipulation, the parties agreed to dismiss Count II and Count III against all Defendants. (ECF No. 44.)

Defendants filed the Motion for Summary Judgment on the remaining claim, excessive force, on October 14, 2019. (ECF No. 42) On December 12, 2019, Plaintiff filed his Response in Opposition to the Motion for Summary Judgment. (ECF No. 47) The Court granted Defendants leave to file a Reply Brief, and Plaintiff leave to file a Sur-Reply, which were filed, respectively, on December 11, 2019 and December 18, 2019. (ECF Nos. 52, 59.)

## II.   LEGAL STANDARD

Summary judgment is appropriate where the record and evidence, taken in the light most favorable to the non-moving party, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is genuine only if there is a sufficient evidentiary

---

[3] Both parties agree that after Officer Mazzante directed Plaintiff to "put [his] legs straight out and cross them now," Plaintiff pulled his legs towards his body, crossing them. See Defs.' Statement of Facts ¶26, Pl.'s Resp. in Opp. to Defs.' Statement of Facts ¶26.

3

basis on which a reasonable jury could find for the non-moving party. Anderson, 477 U.S. at 249. A factual dispute is material only if it might affect the outcome of the suit under governing law. Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather, that party must cite "to particular parts of materials in the record" showing that there is a genuine dispute for trial. Fed. R. Civ. P. 56(c). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325). The non-moving party has the burden of producing evidence to establish prima facie each element of its claim. Celotex, 477 U.S. at 322-323. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine dispute as to any material fact, then summary judgment is proper. Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case." Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting Celotex, 477 U.S. at 325).

### III. DISCUSSION

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff first asserts an excessive force claim against Officer Bernot and, as discussed in his Response in Opposition to Defendants' Motion for Summary Judgment, indicates that he asserts a Monell claim against the City of Lancaster as well.

Defendants move for summary judgment with respect to the excessive force claim on the grounds that the force used by Officer Bernot was constitutionally permissible and "at a minimum, Officer Bernot should be afforded qualified immunity." (Br. in Supp. of Def.'s Mot. Summ. J. at 2.) Defendants first contend that, given that the use of force used was "minimal," "caused no injuries," and "was used only after plaintiff refused multiple verbal commands," it was objectively reasonable, and thus, did not violate the Fourth Amendment. Id. at 5-8.

Defendants further argue that Officer Bernot is entitled to qualified immunity as his conduct did not violate a clearly established statutory or constitutional right. Id. at 8-12.

In response, Plaintiff maintains that Defendant Bernot's use of force was objectively unreasonable in view of the facts and circumstances of the case at hand. Specifically, Plaintiff asserts that, because he was compliant and did not pose a threat to the officers, Officer Bernot's use of force was excessive and unreasonable. (Pls.' Mem. of Law in Opp'n to Def.'s Mot. Summ. J. at 4-7.) With respect to qualified immunity, Plaintiff argues that it does not immunize police officers where, similar to the instant case, a person was "following directives, no threat, and not a flight risk." Id. at 7. Plaintiff further claims that there exists "a material question of fact as to whether Defendant Bernot used force maliciously and sadistically to cause harm" which, if found to be true, would prohibit the use of qualified immunity as an affirmative defense. Id. at 7-8.

### a. Claim of Excessive Force Against Officer Bernot

The Fourth Amendment guarantees the "right of the people to be secure in their persons houses, papers, and effects, against unreasonable searches and seizures." U.S.C.A. Const. Amend. 4. In the context of an "arrest or investigatory stop," excessive force claims invoke the protections of the Fourth Amendment against unreasonable seizures, and thus are analyzed under a "reasonableness standard." Graham v. Connor, 490 U.S. 386, 394–95 (1989). "[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397 (citing Scott v. United States, 436 U.S. 128, 137–39 (1978); Terry v. Ohio, 392 U.S. 1, 21 (1968)). When evaluating the reasonableness of the force used, the court must judge "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396 (citing Terry, 392 U.S. at 20–22).

The "test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, "its proper application requires careful attention to the facts and circumstances of each particular case. . ." Id. at 396. How much force is reasonable in effectuating an arrest is based on the "totality of the circumstances" which may include: 1) the severity of the crime at issue, 2) the immediate threat to the safety of the officers

5

or others that the suspect poses, 3) whether the suspect is resisting or evading arrest, 4) how "violent or dangerous" the suspect is, 5) the "duration" of the force, 6) whether the force was used in making an arrest 7) whether the suspect might be armed, and 8) the number of people with whom the police must contend. Id.; see also Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir.1997) abrogated on other grounds by Curley v. Klem, 499 F.3d 199, 209–11 (3d Cir. 2007). None of these factors alone are controlling in determining whether a use of force was objectively reasonable. Martin v. City of Reading, 118 F. Supp. 3d 751, 760 (E.D. Pa. 2015).

Because neither party contests that a seizure occurred in this case, the only question with respect to Plaintiff's excessive force claim is whether the force used was reasonable. We find that, viewing facts in the light most favorable to the Plaintiff, there exists a genuine dispute of material fact as to whether Officer Bernot's use of a taser on Plaintiff was objectively reasonable, and therefore potentially excessive in light of the circumstances. In particular, using the factors identified by Graham and Sharrar, this Court finds that there exists a genuine dispute as to whether Plaintiff was resisting arrest, compliant with officers, and posed an immediate threat to the officer and others when he was tased.

Applying the Graham and Sharrar factors, the Court first examines the severity of the crime. Both Officers Bernot and Mazzante note in their incident reports and depositions that they responded to a dispatch of a male wielding a bat at three other subjects, however upon arriving, did not see Plaintiff with a bat in his possession. As to whether Plaintiff was armed, Defendants note that they did not have an opportunity to pat down Plaintiff for weapons, implying that he may be armed, while Plaintiff disputes this suggestion as Plaintiff was wearing shorts and a t-shirt, insinuating that he was not concealing anything.[4] Regarding the immediate threat Plaintiff posed, and whether Plaintiff was resisting or evading arrest, both parties provide evidence of genuine issues of material fact on these issues. Defendants contend that Plaintiff refused to obey commands throughout the entire incident and was preparing to flee the scene. In support of this, Defendants claim that Plaintiff "had a 100-yard stare," actively looking in both directions rather than focusing on the officers. Defendants further note that the officers

---

[4] Based on the video, we find that Plaintiff's contention presents a genuine dispute as to whether he could have been armed given the clothing he wore. Compare with Patrick v. Moorman, 855 F. Supp. 2d 392, 395 n. 3, 400-402, (E.D. Pa. 2012), aff'd, 536 Fed. Appx 255 (3d Cir. 2013) (where video shows that Plaintiff's shirt was indisputably baggy, and his waistband was not visible, the court accepted Defendants characterization of Plaintiff's attire).

6

recognized Plaintiff's act of pulling his feet toward his body as a "possible attempt to flee." Lastly, Defendants assert that, because event took place in an unsecured area on the "side of a roadway being used by motor vehicles," the threat to both Officer Bernot and Plaintiff increased should a physical struggle continue into the roadway. Plaintiff argues that he did not present an immediate threat as he sat on the curb with his back to Officer Bernot and with Officer Mazzante in front of him. Plaintiff maintains that he did comply with the Officer's commands, sitting down and straightening his legs, however, could not comply with "contradictory directives" when Officer Mazzante directed him to both put his legs out and cross them. Based on video evidence, a reasonable a jury could conclude that Plaintiff was attempting to follow the command to cross his legs as he pulled them back toward his body, and thus did not present an immediate threat to officers or others nearby.

    Defendants cite several cases, in this District Court and in others, in support of their argument that the force employed by Officer Bernot was constitutionally permissible. We find these cases inapposite as they differ factually, specifically with respect to the threat presented by the suspect and the level of resistance the suspect offered during the seizure. First, Defendants cite Brown v. Cwynar, 484 Fed. Appx. 676, 680 (3d Cir. 2012) in which the Third Circuit affirmed the District Court's grant of summary judgment on Plaintiff's excessive force claim, finding that two uses of a taser gun on a 73-year-old arrestee was reasonable. In Brown, the Officer who deployed the taser (1) had been informed by two dispatch calls that his fellow officer was in need of assistance and was "fighting" with someone, (2) personally observed the plaintiff "scuffling" with police officers in a car, (3) and was informed by another officer that the plaintiff had already been tased but continued to act uncooperatively. Id. Further, the plaintiff was lying on the ground, refusing to release his hands from beneath his body, and was warned that he would be tased if he did not release his hands. Id. In comparison to the instant case, the plaintiff in Brown actively resisted arrest throughout the entire encounter, including concealing his hands below his body prior to the final use of a taser.

    Second, Defendants offer Ickes v. Borough of Bedford, 807 F. Supp. 2d 306 (W.D. Pa. 2011) to strengthen their argument that Officer Bernot's use of force was objectively reasonable. We first note that the court in Ickes did not rule on the issue of whether the force employed was reasonable, instead finding that the officer was entitled to qualified immunity as he did not violate a "clearly established" right. Id. at 323 ("While reasonable minds may differ as

7

to whether the degree of force… was appropriate, it cannot be said that Kinsinger violated a "clearly established" constitutional right enjoyed by Ickes"). Further, while the Ickes court does identify some evidence that supports a finding a reasonableness, this evidence depicts the plaintiff actively resisting arrest. Id. at 319 (the plaintiff tried to "arm bar" an officer in an attempt to evade detention and replied "go ahead and taser me" after being warned that the taser would be used.")

Third, Defendants rely on Gruver v. Borough of Carlisle, No. 4:CV 05-1206, 2006 WL 1410816, at *3 (M.D. Pa. May 19, 2006) in which the plaintiff was tased three times after "failing to heed the Officers' repeated commands, warnings and instructions to cease resistance…." Gruver differs from the facts before this Court because, though the plaintiff in Gruver was suffering from a hypoglycemic attack, he walked away from the officer in a disoriented fashion, did not respond to verbal commands, physically resisted the officer's attempts to subdue him throughout the entire incident. Id. at *2-3. As noted by the court, videotape of the arrest revealed the plaintiff "struggling against the Officers" for several minutes in their attempt to restrain him, and only became subdued when he was tased. Id. at *5. In contrast, videotape of the instant case arguably shows that Plaintiff submitted to the officers as he sat on the curb.[5]

Instead of the cases cited by Defendants, we are guided by several involving use of a taser that are more analogous to the present case in both the level of immediate threat posed and resistance offered by the plaintiff. Beginning with Shultz v. Carlisle Police Department, 706 F. Supp. 2d 613, 621 (M.D. Pa. 2010), the court denied summary judgment on the excessive force claim where the plaintiff had previously struggled with officers but, by the time he was tased, appeared to have already been brought under control. ("While plaintiff certainly appears to have resisted defendants' attempts to place him on the gurney, a jury could also conclude that the tape demonstrates that plaintiff was not a danger to anyone and did not pose a threat to the police officers' safety…. [the officers] appear to have plaintiff under their control at the time that [Officer] Miller uses his Taser repeatedly on plaintiff"). Similarly, in Reiff v. Marks, No. 08-CV-

---

[5] Defendants further cite to cases from the Eleventh Circuit, District of Vermont, and Southern District of Texas which, after review, we find unpersuasive. See Zivojinovich v. Barner, 525 F.3d 1059 (11th Cir. 2008); Buckley v. Haddock, 292 Fed. Appx. 791, 794 (11th Cir. 2008); Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004); Towsley v. Frank, No. 5:09-CV-23, 2010 WL 5394837 (D. Vt. Dec. 28, 2010); Stanley v. City of Baytown, Texas, No. CIV.A. H-04-2106, 2005 WL 2757370 (S.D. Tex. Oct. 25, 2005).

5963, 2011 WL 666139, at *5-7 (E.D. Pa. Feb. 23, 2011), the court found that there existed genuine issues of material fact as to whether the plaintiff resisted arrest and whether there was a possibility that the plaintiff was armed after having been pulled over for a traffic violation.[6] . Lastly, even when the plaintiff had previously "thrown a hatchet and knives at police officers," the court denied summary judgment in Henry v. City Philadelphia, CIV.A. 09-1584, 2010 WL 3927638, at *5 (E.D. Pa. Sept. 30, 2010) on the plaintiff's excessive force claim. Where the plaintiff presented evidence that he "was not armed when he stepped out of the house in response to the officers' instructions," and that he "did not move towards the officers with a knife, or in any manner that could be deemed threatening," the court held that a jury could find that the officer's use of a taser objectively unreasonable. Id. In each case above, like the case before this Court, the court denied summary judgment on excessive force claims where the plaintiff produced evidence that he no longer resisted nor presented an immediate threat.

Whether the amount of force applied by an officer was reasonable is normally an issue for the jury. Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004). Because there exists a genuine dispute as to whether Plaintiff was resisting arrest, compliant with officers, and posed an immediate threat at the point Officer Bernot deployed his taser, there is a jury question as to whether an objectively reasonable officer would have acted in the same way as Officer Bernot did. Therefore, summary judgment is inappropriate as to Plaintiff's excessive force claim.

### b. Qualified Immunity

Even if Officer Bernot's use of force was excessive, Defendants argue that he is entitled to qualified immunity as his conduct did not violate a clearly established statutory or constitutional right. Qualified immunity is intended to shield government officials performing discretionary functions, including police officers, "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The burden is on the defendant to establish that he is entitled to qualified immunity. See Harlow, 457

---

[6] Though the Defendant officer claimed that the plaintiff "physically resisted arrest by refusing to stay on the ground and put his hands behind his back," the plaintiff's testimony, along with the testimony of an eyewitness, claimed that he appeared to have been compliant. Further, the defendant officer claimed that "there was a possibility that Plaintiff had a weapon hidden on his person' whereas the plaintiff countered that he was "unarmed and not observed making any furtive movements." Reiff v. Marks, at *6-7.

U.S. at 815; see also Beers–Capitol v. Whetzel, 256 F.3d 120, 142 n. 15 (3d Cir. 2001). This Court finds that Defendants have not met their burden, and thus Officer Bernot is not entitled to qualified immunity.

The issue of qualified immunity should be decided at the earliest possible stage in litigation because, as it is "an immunity from suit rather than a mere defense to liability," it is "effectively lost if a case is erroneously permitted to go to trial." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)); see also Hunter v. Bryant, 502 U.S. 224, 227 (1991). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). Thus, this determination "must be made in light of the specific factual context of the case." Id. at 201.

Qualified immunity attaches unless a Plaintiff demonstrates that the official's conduct violated a clearly established right. Anderson v. Creighton, 483 U.S. 635, 640. Accordingly, the court must consider two factors: (1) whether the official violated a statutory or constitutional right, and (2) whether that right at issue was "clearly established" at the time of the defendant's alleged misconduct. Kopec v. Tate, 361 F.3d 772, 776 (3d Cir.2004) (citing Saucier 533 U.S. at 200–01). District courts are, however, permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis" to address first "in light of the circumstances of the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009). As discussed above, there exists a genuine issue of material fact as to whether the force used by Officer Bernot was excessive and unreasonable in violation of Plaintiff's Fourth Amendment rights. Thus, the Court turns to the second prong of qualified immunity, whether it would have been clear to a reasonable officer that Officer Bernot's conduct was unlawful in light of "clearly established" law. Saucier, 533 U.S. at 201–02.

A right is "clearly established" when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson 483 U.S. at 640). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful… but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002). Officials can still be on notice that their conduct violates

10

established law even in novel factual circumstances. Id. at 741. The Supreme Court instructs that the "salient question" is whether the state of the law at the time gives officials fair warning that their conduct is unconstitutional. Id.

Defendants correctly state that "multiple Courts of Appeal[s] have approved the use of tasers to subdue individuals who resist arrest or refuse to comply with police order." This Court does not disagree. See Brown, 484 Fed. Appx. at 681 (collecting cases). However, viewing the facts in the light most favorable to the non-moving party, at the point Officer Bernot deployed his taser, Plaintiff was not resisting arrest and was complying with the commands to both put his legs straight out and cross them. A reasonable officer under these circumstances would know that the use of physical force that included tasering a subject who had already been subdued and did not pose any threat violated the plaintiff's right to be free from excessive force. See Shultz, 706 F. Supp. 2d 624.

As noted in our discussion of the excessive force claim above, courts have previously denied summary judgment in a number of cases involving use of a taser where a subject was already subdued, was not resisting arrest, and did not pose a threat to the officers or others. In Shultz, the Court found a qualified immunity defense unavailable where a jury could find, due largely to videotape evidence, that the plaintiff was controlled and no longer presented a threat to anyone. Shultz, 706 F. Supp. 2d at 624. Further, the court denied qualified immunity in Henry where the Plaintiffs pointed to evidence which, if credited by the jury, "would support the conclusion that Henry was not armed when he stepped out of the house in response to the officers' instructions that he come out and that he did not move toward the officers with a knife, or in any manner that could be deemed threatening [at the point he was tased]." Henry, 2010 WL 3927638 at *5. At least five other cases from the Middle and Eastern Districts of Pennsylvania have denied summary judgment on excessive force claims where evidence suggested that the plaintiff was not resisting arrest or attempting to flee at the time he or she was tased. See Reiff, 2011 WL 666139, at *2 (denying summary judgment where some evidence showed that the plaintiff " 'appeared to ... have been compliant' " at the time he was tased) (ellipsis in original); Wilhere v. Delaware Cty., 2010 WL 1381664, at *3 (E.D.Pa.2010) (denying summary judgment where plaintiff was tased after allegedly "rais[ing] his arms and hands to show that he was not being physically threatening or attempting to intimidate the sheriffs"); Boyd v. Kissinger, 2008 WL 2550584, at *6 (E.D.Pa.2008) (denying summary judgment where

11

plaintiff alleged that he was pulled from his vehicle by his hair, held down on the ground, and tased "after he explained that he wanted to get his children home"); Buchanan v. West Whiteland Twp., 2009 WL 54949, at *3 (E.D.Pa.2009) (denying summary judgment given dispute as to whether plaintiff-motorist "actually revved her engine before initially being tasered"); Caliguiri v. City of Pittsburgh, 2009 WL 1546325, at *1 (W.D.Pa.2009) (denying summary judgment where plaintiff "contend[ed] that defendant Muoio used a Taser International M26 ('Taser') gun on her despite the fact that she was cooperating with the other officers who were arresting her").

As the Third Circuit observed in Burns v. County of Cambria, 971 F.2d 1015, 1024 (3d Cir.1992), "[t]his court has adopted a broad view of what constitutes an established right of which a reasonable person would have known." Kopec, 361 F.3d at 778. There does not have to be "precise factual correspondence" between the case at issue and a previous case in order for a right to be "clearly established," and we would not be "faithful to the purposes of immunity by permitting ... officials one liability-free violation of a constitutional or statutory requirement." Id. (quoting People of Three Mile Island v. Nuclear Regulatory Comm'rs, 747 F.2d 139, 144–45 (3d Cir.1984)). If the jury finds that Plaintiff was compliant, non-resistant, and presented no imminent threat to the officers and others at the time he was tased, we find that a reasonable officer would know that the use of a taser would violate Plaintiff's right to be free from excessive force under the circumstances. Therefore, Officer Bernot is not entitled to qualified immunity with respect to the excessive force claim.

### c. Monell Claim against the City of Lancaster

In Plaintiff's Response to Defendant's Motion for Summary Judgment, he asserts a Monell[7] claim against the City of Lancaster (d/b/a Lancaster Police Department) for its use of force policy. Plaintiff claims that Lancaster's use of force policy regarding tasers is unconstitutional as it directs police to use force which is not proportional to threats from subjects. Specifically, Plaintiff argues that the policy is excessive because it permits officers to taser individuals who are verbally non-compliant but do not present an imminent threat. Further,

---

[7] A municipality like the City of Lancaster cannot be held liable under § 1983 on the doctrine of respondeat superior. However, as set forth in Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658, 694 (1978), a municipality can be sued when its official policy or custom causes an injury to a plaintiff. To bring a Monell claim, a plaintiff must establish that (1) a constitutionally-protected right has been violated, and (2) the alleged violation resulted from municipal policy, custom, or deliberate indifference. See id. at 694-95; Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).

Plaintiff claims municipal liability on a "failure to train" theory as "the municipality is liable for failing to train its officers to require proportionality."[8]

Defendants respond in their Reply Brief that Plaintiff's Monell claim should be dismissed as he raises it for the first time in his Response to Defendant's Motion for Summary Judgment. Because Plaintiff failed to plead a Monell claim in his Complaint, Defendants argue that he should not be granted leave to amend the Complaint at this point in time as it would cause undue delay and undue prejudice. Further, Defendants maintain that even assuming, arguendo, Plaintiff's Complaint does allege a Monell claim, his claim fails as a matter of law.

In response to Defendants' Reply Brief, Plaintiff filed a Sur-Reply in which he contends that "Monell is not a separate cause of action, but rather an element of a Section 1983 claim" and that, because Plaintiff pled an excessive force claim against the City of Lancaster, it was on notice "that municipal liability was an element of that claim." Plaintiff adds that "Monell was always an implied part of the legal analysis for a section 1983 claim against a municipality."

We agree with Defendants that Plaintiff has failed to allege a Monell claim in his Complaint, and thus, the claim may not be newly asserted in his Response to Defendants' Motion for Summary Judgment. The Complaint initially alleged three claims: Count I – Excessive Force/Assault and Battery, Count II – Eighth Amendment Violation-Failure to Provide Medical Care and Treatment, and Count III – 42 U.S.C. Sec. 1983 Discrimination Based upon Race. By stipulation, the parties agreed to dismiss Count II and Count III against all Defendants. The only remaining claim asserts an excessive force claim against "Defendants," however, the allegations under Count I do not support any plausible theory of Monell liability, nor do they put the City of Lancaster on notice of a Monell claim against it.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary, however, the statement must give the defendant fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its

---

[8] As explained in City of Canton v. Harris, 489 U.S. 378, 380 (1989), under certain circumstances, a municipality can be held liable under § 1983 for constitutional violations resulting from its failure to train municipal employees.

13

face." Id. at 570. In the context of a Monell claim, this means that Plaintiff's complaint must plead enough facts to suggest that there exists "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton, 489 U.S. at 385.

Plaintiff's Complaint, devoid of any reference to a policy, custom, or failure to train, fails to allege facts sufficient to support a Monell claim. The Complaint alleges, in pertinent part, that: Plaintiff complied with the LPD without resistance, the LPD used excessive force by using a taser gun on Plaintiff, Officer Bernot and the LPD are under investigation due to the incident, and Defendants placed Plaintiff in fear of physical harm and contact and then physically harmed and contacted Plaintiff.[9] These facts, in addition to others individually mentioning Officer Bernot, support a plausible claim of relief against Officer Bernot for excessive force. Nevertheless, no facts suggest a municipal policy or custom with respect to use of force, including a deliberate or conscious choice by Lancaster not to effectively train its police department, which caused Plaintiff's alleged constitutional deprivation.

A plaintiff may introduce new facts into the record at the summary judgment stage. See Bell Atl. v. Twombly, 550 U.S. 544, 563 (2007) ("[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."). However, a plaintiff cannot introduce new legal theories or claims through an opposition to a motion for summary judgment. Phillips v. SEPTA, No. CV 16-0986, 2018 WL 827440, at *4 (E.D. Pa. Feb. 12, 2018) (citing myService Force, Inc. v. Am. Home Shield, No. 10-6793, 2013 WL 180287, at *12 (E.D. Pa. Jan. 17, 2013) ("Federal pleading standards do not allow a party 'to raise new claims at the summary judgment stage'") (internal citation omitted); see also Bell v. City of Phila., 275 Fed. Appx. 157, 160 (3d Cir. 2008) (non-precedential) ("A plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'") (quoting Shanahan v. City of Chi., 82 F.3d 776, 781 (7th Cir. 1996)).

Accordingly, we find that Plaintiff may not assert a new Monell claim against the City of Lancaster in its Response to Defendant's Motion for Summary Judgment. Because a municipality cannot be held liable under § 1983 on the doctrine of respondeat superior, and

---

[9] Plaintiff's Sur-Reply points to additional "facts" in the Complaint supporting the Monell claim, however, they are purely legal conclusions. For example, Plaintiff complaint alleges that "[t]he actions of Officer Bernot and the Lancaster Police were shockingly violent and the use of excessive force was done without any justification" and "Defendants' actions stated above, inter alia, were committed under color of state law and were violations of Plaintiff's clearly established and well settled Constitutional and other legal rights."

14

Plaintiff has failed to sufficiently allege a Monell claim, we dismiss the City of Lancaster (d/b/a/ Lancaster Police Department) from the Complaint. See Monell, 436 U.S. at 691. Further, Officer Bernot is dismissed from suit in his official capacity, as an officer for the Lancaster Police Department, however, the claims against Officer Bernot in his individual capacity remain.[10]

### d. Punitive Damages

Defendants also argue that, even if the Court does not grant summary judgment on Plaintiff's excessive force claim, it should grant summary judgment as to Plaintiff's claim for punitive damages. Defendants contend that "there is no evidence that Officer Bernot was motivated by an evil motive or that he was recklessly indifferent to Plaintiff's Constitutional rights." In response, Plaintiff claims that there is a material question of fact as to whether Officer Bernot used force maliciously and sadistically to cause harm given that Plaintiff was "both compliant and did not exhibit behaviors of defensive resistance." Further, Plaintiff cites to Officer Bernot's history of using tasers much more frequently than other officers in the Lancaster Police Department.

Punitive damages are available in an action under § 1983 when the defendant's conduct is "shown to be motivated by evil motive or intent, *or when it involves reckless or callous indifference to the federally protected rights of others*." Smith v. Wade, 461 U.S. 30, 56 (1983) (emphasis added). "The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." Memphis Community School Dist. v. Stachura, 477 U.S. 299, 306 n. 9 (1986). Construing the facts and reasonable inferences therefrom in light most favorable to Plaintiff, the Court finds that there are sufficient facts on the record that would allow a reasonable juror to determine that Officer Bernot acted in a callous and reckless manner. Plaintiff contends that he was compliant with the officers' commands and was not resisting or evading arrest. If the jury finds these facts to be true at trial, it could reasonably infer that Officer Bernot's state of mind was reckless or callously indifferent to Plaintiff's right to be free from excessive force when he deployed his taser. Further, Plaintiff

---

[10] A suit against an officer in his official-capacity "represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. 690, n. 55. Thus, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Because "[a] local government may be sued under § 1983 only for acts implementing an official policy, practice or custom," and Plaintiff has failed to assert these claims in his Complaint, Officer Bernot is dismissed in his official capacity from suit. See Losch v. Borough of Parkesburg, Pa., 736 F.2d 903, 910 (3d Cir. 1984).

points to Officer Bernot's heightened use of tasers in comparison to other LPD officers.[11] A jury could find that, due to Officer Bernot's pattern of excessive use of his taser, he acted recklessly with respect to Plaintiff's federally protected rights. [12] Thus, summary judgment is denied for the punitive damages claim against Officer Bernot.

## IV. <u>CONCLUSION</u>

Based on the foregoing reasons, this Court finds that Plaintiffs have come forth with evidence sufficient to raise a genuine dispute of material fact as to whether Officer Philip Bernot used excessive force when he used his taser on Plaintiff. Additionally, Officer Bernot is not entitled to qualified immunity on the excessive force claim, and thus not immune from suit. This Court does find that Plaintiff failed to plead a <u>Monell</u> claim in his Complaint, and thus may not assert one at the summary judgment stage. As Plaintiff has failed to plead a <u>Monell</u> claim, we dismiss the City of Lancaster (d/b/a/ Lancaster Police Department) from the Complaint as well as Officer Phillip Bernot in his official capacity, as an officer for the Lancaster Police Department. However, the claim for excessive force against Officer Bernot in his individual capacity remains. Accordingly, Defendants' Motion for Summary Judgment is **DENIED** in part and **GRANTED** in part.

---

[11] Defendant Bernot estimated that he used his taser 5 to 10 times per year. In comparison, Officer Her said that she used her taser about two to three times per year, Detective Sergeant Zook testified that he used his taser once since he received his taser in January 2018, and Sargent Nauman testified that he used his taser once since he received it in 2013. <u>See</u> Pl.'s Statement of Facts ¶¶20-22.

16